UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X

SAMARTH AGRAWAL,                          :

                    Petitioner,           :

     -against-                            :

UNITED STATES OF AMERICA,                 :

                    Respondent.           :

-----------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _8/1/17_

15 Civ. 1724 (JSR)(HBP)

REPORT AND
RECOMMENDATION

          PITMAN, United States Magistrate Judge:

          TO THE HONORABLE JED S. RAKOFF, United States District
Judge,

I.   Introduction

          Pro se petitioner Samarth Agrawal moves pursuant to 28
U.S.C. § 2255 to vacate, set aside or correct the sentence
imposed on him by your Honor in the criminal case bearing Docket
Number 10 Cr. 417 (JSR).  In the alternative, petitioner seeks a
writ of error coram nobis vacating his conviction.

          Petitioner was convicted after trial of theft of trade
secrets and transportation of stolen property in interstate and
foreign commerce, in violation of 18 U.S.C. §§ 1832(a)(2) and
2314, respectively.  Petitioner was sentenced to concurrent,
thirty-six month terms of imprisonment on each count, to be

followed by a two-year term of supervised release. As described in more detail below, petitioner's convictions arose out of his theft of computer code from his employer and his attempt to use that code in an effort to secure lucrative employment with a competitor of his employer.

Petitioner claims that his trial counsel was ineffective in four respects. Specifically, petitioner claims that his counsel (1) failed to argue that the computer code that petitioner took from his employer cannot constitute a "product" within the meaning of Section 1832, (2) failed to argue that intangible computer code cannot constitute property within the meaning of Section 2314, (3) failed to object to certain aspects of the jury charge and (4) erroneously advised petitioner that petitioner could be found guilty only if he had the intent to steal or convert the computer code at the moment he copied and removed the code, rather than at some later point in time, and that based on that faulty advice, petitioner decided to proceed to trial and testify.

The Government opposes the petition on both procedural and substantive grounds.

For the reasons set forth below, I respectfully recommend that the motion to vacate the sentence and the alternative

motion for a writ of error <u>coram</u> <u>nobis</u> be denied in all respects
and that the petition be dismissed.

## II.   Facts

### A.   Facts Giving Rise to
Petitioner's Conviction[1]

From 2007 through 2009, petitioner worked for Société
Générale ("SocGen"), initially as a quantitative analyst in
SocGen's High Frequency Trading Group.  As a condition of his
employment, petitioner was required to agree that neither during
nor after his employment would he "disclose or furnish to any
entity . . . any confidential or proprietary information of
[SocGen]" and that upon the termination of his employment, he
would return all documents, papers, files or other materials in
his possession connected to SocGen.

Petitioner was promoted to trader in April 2009.  In
that position, petitioner had access to the computer code for one
of SocGen's proprietary trading systems, the DQS system, although

---

[1]The summary of facts set forth herein is derived from the
Court of Appeals' decision affirming petitioner's conviction and
petitioner's and the government's briefs on direct appeal.
<u>United States v. Agrawal</u>, 726 F.3d 235 (2d Cir. 2013), <u>cert</u>.
<u>denied</u>, 134 S. Ct. 1527 (2014); Brief and Special Appendix for
Defendant-Appellant Samarth Agrawal, (No. 11-1074-CR), 2011 WL
6961801; Brief for the United States, (No. 11-1074-CR), 2012 WL
1154201.

3

he was inadvertently also provided with access to the code for three other trading systems. One of the systems to which petitioner was inadvertently given access was entitled the ADP system. The ADP system had generated millions of dollars of revenue for SocGen.

Petitioner began exploring other employment opportunities in June 2009, and to that end, he met with Tower Research Capital ("Tower"), a hedge fund. Agrawal told representatives of Tower that he ran one of SocGen's two index arbitrage strategies, had a complete understanding of that strategy and could help build a very similar system for Tower.

Five days after his meeting with Tower, petitioner went to his office in New York on a Saturday, printed out thousands of pages of the computer code that made up the DQS code and carried those pages to his residence in New Jersey. Shortly thereafter, petitioner met with Tower again and discussed replicating SocGen's trading strategies at Tower. On July 10, 2009, Tower offered petitioner employment. The offer included a salary and bonuses in excess of $500,000 plus 20% of the profits generated from an anticipated clone of the DQS system and 10% of the profits generated by any ADP clone. Petitioner informally accepted the offer in August 2009, but delayed informing SocGen of his plans to leave in order to get more experience with

4

SocGen's high frequency trading systems and to obtain an anticipated bonus in October 2009. In addition, during his remaining months with SocGen and after he had informally accepted Tower's employment offer, petitioner copied and printed hundreds more pages of SocGen's ADP computer code for its high frequency trading system and brought them to his home.

During the period between his acceptance of Tower's offer of employment and his actual departure from SocGen, petitioner continued to meet with representatives of Tower to discuss the high frequency trading systems he expected to develop for it and to assure Tower that he could get whatever information he needed about SocGen's trading systems to fill any gaps in his knowledge.

Petitioner formally resigned from SocGen in mid-November 2009. In the week preceding his departure, he deleted from his computer the files that indicated he had copied SocGen's proprietary computer code. Petitioner's employment contract with SocGen prohibited him from working for a competitor for several months after his resignation, although he was paid by SocGen during this period. During this period between his departure from SocGen and his expected start date with Tower, however, petitioner met with Tower personnel, including the individuals who were going to write the code that replicated SocGen's high

frequency trading systems. Some of these meetings were recorded by Tower. Petitioner provided Tower's personnel with a detailed description of the system he wanted them to construct, including mathematical information derived from SocGen's code that he identified as such.

FBI agents arrested petitioner at his home on April 19, 2010, the day he was scheduled to commence employment with Tower. A search of petitioner's residence yielded thousands of pages of computer code pertaining to SocGen's two high frequency trading systems. Petitioner admitted to the arresting agents that he had printed out the code and transported it to his residence without telling his supervisors at SocGen and without receiving their authorization to do so.

## B. Procedural History

Petitioner's trial commenced on November 8, 2010. The government's evidence included testimony from SocGen and Tower employees and an expert on high frequency trading, printouts of SocGen's computer code and handwritten notes recovered from Agrawal's residence, handwritten notes recovered from Tower employees, recordings of meetings between Agrawal and Tower employees, video recordings and computer logs showing Agrawal's copying, printing and removal of the code from SocGen's office

and several employment contracts and confidentiality agreements between Agrawal and SocGen.

Petitioner testified in his own defense, admitting that he had printed out the DQS and ADP code and transported the printouts from his office in New York to his residence in New Jersey. He also admitted that the code was proprietary to SocGen and that he had disclosed the code to Tower to enhance his chances of receiving an offer of employment. Petitioner claimed, however, that he had no intention to steal or convert the code at the time he transported the code to his home; rather, he claimed that he brought the code to his residence with the intention of performing work on the code for SocGen. He claimed that he formed the intent of converting the code for his own benefit and Tower's sometime after he had taken the code to his residence.

The jury returned a verdict of guilty on both counts of the indictment on November 19, 2010, and defendant was sentenced as indicated above.

Petitioner appealed his conviction to the United States Court of Appeals for the Second Circuit. Petitioner's brief asserted three claims: (1) the jury instructions were erroneous and unduly prejudicial to the defense; (2) the evidence and instructions to the jury constructively amended the indictment and (3) the convictions on both counts were legally and/or

7

factually defective. Specifically, petitioner's first claim asserted that your Honor's instructions were flawed with respect to the intent and knowledge element of Section 1832 and that the instructions concerning Section 2314 relieved the government of the burden of proving that the code constituted "goods, wares, [or] merchandise" within the meaning of Section 2314 and were also flawed with respect to the interstate commerce and value elements. In his second claim, petitioner argued that your Honor's instructions effectively amended the indictment because the conviction rested on facts outside the "to wit" clause of the Section 1832 count. In his third claim, petitioner argued that his convictions were defective because SocGen's trading system was not a "product that is produced for or placed in interstate or foreign commerce" within the meaning of Section 1832 and that the SocGen's computer code was not "goods, wares, [or] merchandise" within the meaning of Section 2314.

For reasons that are discussed in detail below, the Court of Appeals rejected all of petitioner's arguments and affirmed his conviction on August 1, 2013. United States v. Agrawal, supra, 726 F.3d 235. The Supreme Court denied petitioner's application for a writ of certiorari on March 10, 2014. Agrawal v. United States, supra, 134 S. Ct. 1527.

Petitioner was released from the custody of the United States Bureau of Prisons Bureau on or about November 28, 2012 and was subsequently relocated to India, where he now resides.[2]

III.   Analysis

    A.   Petitioner Has Not Met
        the Threshold Requirements
        for Section 2255 Relief
        or Coram Nobis Relief

Relief under Section 2255 is available only to a "prisoner in custody." A District Court lacks jurisdiction to grant relief under Section 2255 to an individual who is no longer in custody. Scanio v. United States, 37 F.3d 858, 860 (2d Cir. 1994); United States v. Brilliant, 274 F.2d 618, 620 (2d Cir. 1960); Wilson v. United States, 09 Cr. 1086 (DAB)(GWG), 13 Civ. 7430 (DAB)(GWG), 2014 WL 748510 at *4 (S.D.N.Y. Feb. 26, 2014) (Report & Recommendation) (Gorenstein, M.J.), adopted at, 2014 WL 1265915 (S.D.N.Y. Mar. 27, 2014) (Batts, D.J.); Westerfield v. United States, 02 Civ. 1853 (LMM), 2012 WL 360592 at *1 (S.D.N.Y. Feb. 3, 2012) (McKenna, D.J.).

There appears to be no serious dispute that petitioner was not in custody at the time he commenced this proceeding.

---

[2]The record does not disclose whether petitioner was removed to India or left the United States voluntarily.

9

Petitioner executed his petition on March 4, 2015, more than two years after he was released from prison and after the expiration of his term of supervised release. Thus, it appears that no relief under Section 2255 is available in this matter.

In apparent acknowledgment of this limitation, petitioner asks that, in the alternative, his petition be considered as a petition for a writ of error <u>coram</u> <u>nobis</u>.

A writ of error <u>coram</u> <u>nobis</u> "is an 'extraordinary remedy' authorized under the All Writs Act, 28 U.S.C. § 1651(a), generally sought to review a criminal conviction where a motion under 28 U.S.C. § 2255 is unavailable because petitioner is no longer serving a sentence." <u>Porcelli v. United States</u>, 404 F.3d 157, 158 (2d Cir. 2005), <u>quoting</u> <u>United States v. Morgan</u>, 346 U.S. 502, 511 (1954). The writ "is essentially a remedy of last resort for petitioners who are no longer in custody pursuant to a criminal conviction and therefore cannot pursue direct review or collateral relief by means of a writ of habeas corpus." <u>Fleming</u> <u>v. United States</u>, 146 F.3d 88, 89-90 (2d Cir. 1998) (<u>per</u> <u>curiam</u>). The writ "is not a substitute for appeal, and relief under the writ is strictly limited to those cases in which errors . . . of the most fundamental character have rendered the proceeding itself irregular and invalid." <u>Foont v. United States</u>, 93 F.3d 76, 78 (2d Cir. 1996) (ellipses in original; internal quotation

10

marks and citations omitted); accord United States v. Morgan, supra, 346 U.S. at 511 (coram nobis relief is available "only under circumstances compelling such action to achieve justice").

In the absence of good cause, a writ of error coram nobis is not available if petitioner could have earlier sought relief either by direct appeal or through a Section 2255 motion. Shishkin v. United States, No. 10-cv-4201 (CBA), 2013 WL 6859844 at *4 (E.D.N.Y. Dec. 30, 2013); United States v. Holmes, 942 F. Supp. 2d 412, 416 (S.D.N.Y. 2013) (Koeltl, D.J.); Eisa v. Immigration & Customs Enf't, 08 Civ. 6204 (FM), 2008 WL 4223618 at *6 (S.D.N.Y. Sep. 11, 2008) (Maas, M.J.); Calvert v. United States, No. 06-CV-1722 (CBA), 2007 WL 160918 at *3 (E.D.N.Y. Jan. 17, 2007), aff'd, 351 F. App'x 475 (2d Cir. 2009) (summary order).

> A federal court can only grant coram nobis relief if a petitioner demonstrates "that 1) there are circumstances compelling such action to achieve justice, 2) sound reasons exist for failure to seek appropriate earlier relief, and 3) the petitioner continues to suffer legal consequences from his conviction that may be remedied by granting of the writ." [Foont v. United States, supra, 93 F.3d at 79] (citations, brackets, and internal quotation marks omitted). When "reviewing a petition for the writ, a court must presume that the proceedings were correct, and the burden of showing otherwise rests on the petitioner." United States v. Mandanici, 205 F.3d 519, 524 (2d Cir. 2000).

Chhabra v. United States, 09 Civ. 1028 (LAP), 2010 WL 4455822 at *3 (S.D.N.Y. Nov. 3, 2010) (Preska, D.J.), aff'd, 720 F.3d 395 (2d Cir. 2013).

"To meet the burden of demonstrating that he suffers from a continuing legal consequence, a petitioner must at least point to a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm. . . . [I]t is not enough to raise purely speculative harms." Fleming v. United States, supra, 146 F.3d at 91 (alterations in original; inner quotation marks and citation omitted). Difficulty in finding employment without a showing of specific harm is not a sufficient consequence to justify coram nobis relief. Fleming v. United States, supra, 146 F.3d at 90-91.

Petitioner here fails to meet at least two of the prerequisites for coram nobis relief. First, he offers no explanation for his failure to seek relief by way of a timely motion pursuant to Section 2255. Petitioner was released from custody in November 2012 and began his two-year term of supervised release. Thus, it appears that he could have met the "in custody" requirement of Section 2255 (and sought relief under that statute) until November 2014. See Nkansah v. United States, 08 Cr. 1234 (JSR), 15 Civ. 5100 (JSR)(JLC), 2015 WL 8731914 at *6 (S.D.N.Y. Dec. 14, 2015) (Report & Recommendation) (Cott, M.J.) ("A person under supervised release is still considered 'in custody' and may seek relief through a writ of habeas corpus pursuant to 18 U.S.C. § 2255."), adopted at, 2016 WL 3223626

12

(S.D.N.Y. June 8, 2016) (Rakoff, D.J.). Petitioner offers no explanation whatsoever for his failure to seek Section 2255 relief.

In addition, petitioner has failed to show that he continues to suffer concrete legal consequences as a result of his conviction. In his reply, petitioner claims he suffers from continuing legal consequences because his conviction bars him from re-entering the United States and he has been unable to pursue his profession in India. With respect to the latter issue, petitioner states:

> Apart from this legal consequence I also suffer professional consequences as a result of the felony. My professional education is in the field of Financial Engineering for the US markets (MS in Financial Engineering from Columbia University in New York). It is a multi-disciplinary field involving financial theory, methods of engineering, tools of mathematics and the practice of programing [sic] is a well-recognized professional field in [the] US for which there are many jobs available in the financial cities like New York but unfortunately such is not the case in India. Since the conclusion of my sentence in November, 2012 (which was prior to the decision of direct appeal and filing of 2255 motion) I have been approached by various financial institutions in New York for employment but I am unable to pursue it further with them because I am unable to re-enter [the] United States or apply for a US work permit. Contrary to government's assumption that I cannot find employment in the financial sector

13

> or feel some kind of stigma, my problem is my inability
> to legally pursue any employment that is offered to me.

(Petitioner's Reply, dated Feb. 6, 2016 at 2-3[3]).

Petitioner's only stated reason for seeking to return to the United States is to pursue his career as a financial engineer for the United States markets.[4]  He does not claim that his exclusion from the United States has resulted in the separation of his family, an inability to secure health care, religious or political persecution or some similar hardship.  Thus, petitioner's claimed hardship is an inability to return to the United States to pursue his chosen profession.  However, petitioner does not claim that he has actually been offered employment in the financial services industry or that his inability to return to the United States is a "but for" cause of his inability to find employment.[5]  Under these circumstances, petitioner's claimed injury is speculative.

---

[3]Petitioner's reply was sent directly to my chambers and has not been docketed with the Clerk of the Court.  It will be filed contemporaneously with the filing of this Report and Recommendation.

[4]Petitioner's conviction does render him ineligible for a visa or admission to the United States.  8 U.S.C. § 1182(a)(2)(A)(i)(I) and (a)(2)(B).

[5]Having been found guilty of betraying SocGen's confidences, it seems unlikely that another financial services firm would be anxious to hire petitioner.  See United States v. Agrawal, supra, 726 F.3d at 237 ("The question on this appeal is thus not whether Agrawal is a thief.  He is.").

Similar facts were at issue in <u>Fleming v. United</u> <u>States</u>, <u>supra</u>, 146 F.3d 88, in which an individual convicted of a felony sought <u>coram nobis</u> relief, claiming that the felony conviction rendered him unable to secure employment in the financial industry. 146 F.3d at 90-91. The Court rejected this claim as a basis for <u>coram nobis</u> relief, stating:

> The record in this case contains no evidence that petitioner has sought and been denied licensure as a securities broker, that he has ever been so employed in the past, or that he could obtain such employment but for his conviction. His claim is purely speculative, and as such we do not think it sufficient to justify invoking the "extraordinary remedy," <u>Morgan</u>, 346 U.S. at 511, 74 S.Ct. 247, of coram nobis relief. To meet the burden of demonstrating that he suffers from a continuing legal consequence, a petitioner must at least point to "a concrete threat that an erroneous conviction's lingering disabilities will cause serious harm. . . . [I]t is not enough to raise purely specula-tive harms." <u>United States v. Craig</u>, 907 F.2d 653, 658 (7th Cir. 1990); <u>see also</u> <u>Hager v. United States</u>, 993 F.2d 4, 5 (1st Cir. 1993) (petitioner must demonstrate "<u>significant</u> collateral consequences from the judg-ment") (emphasis added). The requirement of continuing legal consequences would lose all force if speculative harms of the sort petitioner relies upon in this case were sufficient to state a claim for coram nobis re-lief.

<u>Fleming v. United States</u>, <u>supra</u>, 146 F.3d at 91 (alteration in original; footnote omitted).

This case is indistiguishable from <u>Fleming</u>. Petitioner makes no claim that a job offer in his field has ever actually been extended to him or would be extended to him but for his

conviction. Thus, his claim of a continuing legal consequence is speculative and insufficient to support <u>coram nobis</u> relief.

Moreover, even if petitioner did meet these threshold requirements, his petition fails on the merits.

B.  The Petition
   <u>Fails on the Merits</u>

   1.  Applicable
      <u>Legal Standards</u>

Petitioner's sole claim is that his trial counsel was ineffective.

A claim of ineffective assistance asserted in a petition for a writ of error <u>coram nobis</u> is assessed by the <u>Strickland</u> standard routinely applied in habeas proceedings. <u>United States v. Pope</u>, No. 03 CR 492 (RTD), No. 13 CV 598 (RTD), 2013 WL 1563038 at *1 (E.D.N.Y. Apr. 12, 2013).

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

16

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

Accord Lee v. United States, 137 S. Ct. 1957, 1964-65 (2017); Waiters v. Lee, 857 F.3d 466, 477 (2d Cir. 2017); Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid v. Bennett, 296 F.3d 58, 62 (2d Cir. 2002); Hernandez v. United States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel Guerrero v. United States, 186 F.3d 275, 281 (2d Cir. 1999).

> The Strickland standard is both "highly demanding" and "rigorous." Kimmelman v. Morrison, 477 U.S. 365, 382 (1986); Lindstadt v. Keane, 239 F.3d 191, 199 (2d Cir. 2001) ("The Strickland standard is rigorous, and the great majority of habeas petitions that allege constitutionally ineffective counsel founder on that standard."). The petitioner bears the burden of proving that both Strickland prongs are met. See Byrd v. Evans, 420 Fed. Appx. 28, 30 (2d Cir. 2011) (citing Kimmelman, 477 U.S. at 381).

McKenzie v. United States, No. 12-CV-3221 (KAM), 2016 WL 1573450 at *2 (E.D.N.Y. Apr. 18, 2016); see also United States v. Gaskin,

17

364 F.3d 438, 468 (2d Cir. 2004) ("A defendant seeking to over-
turn a conviction on the ground of ineffective assistance of
counsel bears a heavy burden.")

In determining whether counsel's performance was
objectively deficient, courts "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the [petitioner] must overcome
the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." Strickland v.
Washington, supra, 466 U.S. at 689 (internal quotation marks and
citation omitted). A claim of ineffective assistance cannot be
predicated in an attorney's failure to make a meritless argument.
Aparicio v. Artuz, 269 F.3d 78, 99 (2d Cir. 2001) ("[Counsel's]
failure to [assert] a meritless argument does not fall outside
the wide range of professionally competent assistance to which
Petitioner was entitled." (internal quotation marks and footnote
omitted)); United States v. Arena, 180 F.3d 380, 396 (2d Cir.
1999) ("Failure to make a meritless argument does not amount to
ineffective assistance."), abrogated on other grounds by
Scheidler v. National Org. for Women, Inc., 537 U.S. 393 (2003);
United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995); Torres
v. McGrath, 407 F. Supp. 2d 551, 562 (S.D.N.Y. 2006) (Chin, then
D.J., now Cir. J.) (same); Lu v. Phillips, No. 03-CV-2258 (RJD),

18

2005 WL 1889461 at *3 (E.D.N.Y. Aug. 4, 2005); <u>Parrilla v. Goord</u>, 02 Civ. 5443 (WHP), 2005 WL 1422132 at *13 (S.D.N.Y. June 20, 2005) (Pauley, D.J.); <u>Ehinger v. Miller</u>, 942 F. Supp. 925, 928 (S.D.N.Y. 1996) (Mukasey, D.J.) (failure of counsel to make "losing argument" is not ineffective assistance)

With respect to the second element -- prejudice -- petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 694; <u>accord</u> <u>Lee v. United States</u>, <u>supra</u>, 137 S. Ct. at 1964-65. Thus, where a claim of ineffective assistance is predicated on counsel's failure to raise an objection at trial, the defendant can demonstrate prejudice by showing a reasonable probability that the outcome of the proceeding would have been different had the objection been made. <u>Lee v. United States</u>, <u>supra</u>, 137 S. Ct. at 1964-65.

Because the test is conjunctive, a habeas petitioner's failure to satisfy either prong requires that the challenge to the conviction be rejected. <u>See</u> <u>Strickland v. Washington</u>, <u>supra</u>, 466 U.S. at 697; <u>Bennett v. United States</u>, 663 F.3d 71, 85 (2d Cir. 2011).

2.  Petitioner's Arguments

    a.  The Aleynikov
        Argument

        Petitioner first claims that his trial counsel was
ineffective for failing to argue that a confidential trading
system cannot, as a matter of law, qualify as a product suffi-
cient to support a conviction under Section 1832.

        Petitioner's argument has its roots in the Court of
Appeals' decision in United States v. Aleynikov, 676 F.3d 71 (2d
Cir. 2012), which was issued on April 11, 2012, approximately 17
months after the conclusion of petitioner's trial.  Aleynikov,
like petitioner, was employed in the investment banking industry
and misappropriated his employer's proprietary computer code to
use in connection with his employment at a competitor.  Like
petitioner here, Aleynikov was charged with violating Section
1832.  At the time of both Aleynikov's and petitioner's conduct,
Section 1832 provided, in pertinent part:

            Whoever, with intent to convert a trade secret, that is
            related to or included in a product that is produced
            for or placed in interstate or foreign commerce, to the
            economic benefit of anyone other than the owner
            thereof, and intending or knowing that the offense
            will, injure any owner of that trade secret, knowingly
            --

> (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains such information;
>
> (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys such information; [or]
>
> (3) receives, buys, or possesses such information, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; . . .

[is guilty of a crime].

The Court of Appeals reversed Aleynikov's conviction because the government had argued that the "product" was Aleynikov's employer's confidential trading system, and the trading system was never produced for or placed in interstate commerce.  United States v. Aleynikov, supra, 676 F.3d at 81-82.

The Court of Appeals in petitioner's case distinguished Aleynikov.  After noting that the issue had not been preserved and that the Court could reverse only for "plain error," the Court found that jurisdiction in petitioner's case was not based on the theory that SocGen's computer code was a product produced for or placed in interstate or foreign commerce, but rather was based on the theory that SocGen's computer code related to products that were placed in interstate or foreign commerce, namely the securities in which SocGen traded.

> [T]he record reveals that [Section 1832] jurisdiction
> was here put to the jury on a more obvious, convincing
> -- and legally sufficient -- theory that was not pur-
> sued and, therefore, not addressed in Aleynikov:  that
> the securities traded by SocGen using its HFT systems,
> rather than the systems themselves, were the
> "product[s] . . . placed in" interstate commerce.
> Under that theory, the jurisdictional nexus was satis-
> fied because SocGen's stolen computer code "related to"
> the securities (the product) it identified for purchase
> and sale.

United States v. Agrawal, supra, 726 F.3d at 245-46 (emphasis in

original).

The failure of petitioner's counsel to assert that

SocGen's trading system did not qualify as a "product" did not

constitute ineffective assistance.  First, the argument is based

on a decision that did not exist at the time of petitioner's

trial, and the Sixth Amendment does not require counsel to

predict the outcome of future appellate decisions.  Jameson v.

Coughlin, 22 F.3d 427, 429 (2d Cir. 1994); Mayo v. Henderson, 13

F.3d 528, 533 (2d Cir. 1994); Walker v. Jones, 10 F.3d 1569, 1573

(11th Cir. 1994).  "Petitioner's trial counsel . . . .is not

required to have a crystal ball and predict changes in the law in

order to render effective assistance." Rodriguez v. Brown, No.

11-CV-1246 (BMC), 2011 WL 4073748 at *4 (E.D.N.Y. Sept. 13,

2011); see Strickland v. Washington, supra, 466 U.S. at 689 ("A

fair assessment of attorney performance requires that every

effort be made to eliminate the distorting effects of hindsight,

to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.").[6]

Second, there is not the slightest suggestion in the Court of Appeals' opinion that its decision would have been different had the issue been preserved. To the contrary, the record demonstrates that the government did not rely on SocGen's code as being the "product" for purposes of Section 1832. As the Court of Appeals noted, your Honor charged the jury that "the government had to prove that, 'as a factual matter, the computer code was <u>related</u> to a product that was, at least in part, produced for, or placed in, interstate or foreign commerce." <u>United States v. Agrawal</u>, <u>supra</u>, 726 F.3d at 241 (emphasis in original). Similarly, in summation, the government argued:

> The code, you didn't hear a lot about this, but the code was <u>related to</u> a product that was produced for or placed in interstate or foreign commerce. It is one of the requirements that Judge Rakoff will tell you about. There is plenty of interstate commerce here. You remember that one of the things the [HFT] system is designed to do is trade stocks, the indexes associated with those stocks and futures. A couple witnesses

---

[6]Petitioner claims that he had informed his trial counsel of the arguments asserted in <u>Aleynikov</u> but that counsel nevertheless refused to make those arguments. This does not change the fact that at the time of petitioner's trial, no court within the Circuit had adopted the interpretation of Section 1832 that was adopted in <u>Aleynikov</u>. Whether the argument would be persuasive to a court was still unknown at the time of petitioner's trial.

> talked about where futures were traded on the
> America[n] Stock Exchange and not shockingly Chicago.
> That is plenty of interstate [commerce].  That is
> satisfied.

United States v. Agrawal, supra, 726 F.3d at 241 n.5 (alterations
and emphasis in original).

Both the absence of any indication in the Court of
Appeals' decision that its conclusion would have been different
were it not limited to "plain error" review and the fact that the
government affirmatively argued that jurisdiction was predicated
on the theory that the trade secret was related to products that
were traded in interstate or foreign commerce lead to the inevi-
table conclusion that counsel's failure to assert that SocGen's
computer code was not a product within the meaning of Section
1832 had no effect on the outcome of either the trial or the
appeal.

> b.  Failure to Argue
>     That Intangible
>     Computer Code Did Not
>     Constitute Goods,
>     Wares or Merchandise
>     Within the Meaning
>     of Section 2314

Petitioner next argues that his counsel was ineffective
for failing to argue that the intangible computer code that
petitioner misappropriated did not constitute "goods, wares, [or]

24

merchandise" within the meaning of Section 2314. This argument is also based on the Court of Appeals' decision in <u>United States v. Aleynikov</u>, <u>supra</u>, 676 F.3d 71.

Unlike petitioner here, Aleynikov misappropriated his employer's computer code by transmitting it electronically to his home computer; there was no physical taking of any tangible object. <u>United States v. Aleynikov</u>, <u>supra</u>, 676 F.3d at 74. The Court of Appeals concluded that the absence of any physical taking was fatal to Aleynikov's Section 2314 conviction. <u>United States v. Aleynikov</u>, <u>supra</u>, 676 F.3d at 76-77.

The Court of Appeals in petitioner's case distinguished <u>Aleynikov</u> on the ground that petitioner printed SocGen's code on to paper and transported the paper to his residence in New Jersey. <u>United States v. Agrawal</u>, <u>supra</u>, 726 F.3d at 251-52. In reaching its conclusion, the Court relied on <u>United States v. Bottone</u>, 365 F.2d 389 (2d Cir. 1966), in which the court affirmed a Section 2314 conviction arising out of the defendant's copying documents describing manufacturing procedures and subsequently transporting those documents in interstate commerce. The court in <u>Bottone</u> found that such conduct violated Section 2314, notwithstanding the fact that the value of what was stolen lay in the intellectual property contained in the documents rather than in the documents themselves. <u>United States v. Dowling</u>, <u>supra</u>,

365 F.2d at 393-94; see also Dowling v. United States, 473 U.S. 207 (1985) (interstate transportation of unauthorized recordings of copyrighted musical works does not violate Section 2314 because no physical object was stolen and transported in interstate commerce). The Court of Appeals found that petitioner's conduct was indistinguishable from that of the defendants in Bottone and stated that petitioner's claim that the evidence was insufficient to sustain the Section 2314 conviction "fails for lack of any error, much less plain error." United States v. Agrawal, supra, 726 F.3d at 252, 254.

Given the Court of Appeals' disposition of the underlying claim, this aspect of petitioner's ineffective assistance claim is frivolous. In light of the decision in Bottone, any claim by trial counsel that the evidence was insufficient to sustain a conviction under Section 2314 would have been meritless and, as noted above, the Sixth Amendment does not require counsel to make meritless arguments.

c.  Counsel Failed to
    Object to Certain
    Aspects of the Jury Charge

Petitioner's third specification of ineffective assistance asserts that his trial counsel was ineffective for failing to object to the jury charge concerning (1) the knowledge element

of a Section 1832 violation; (2) the meaning of the terms "goods wares and merchandise" as those terms are used in Section 2314 and (3) the failure to explain to the jury how to determine the value of the property that was alleged to be stolen.

Petitioner first asserts that the jury charge with respect to the Section 1832 was defective because it did not require the jury to find that petitioner specifically knew that he lacked authorization to copy and remove SocGen's code and that counsel was ineffective for failing to object to this alleged defect. However, even if I assume that the charge was deficient in this regard and even if I further assume that counsel's failure to object to the charge was so serious that counsel was not functioning as counsel, petitioner cannot demonstrate prejudice, i.e., a reasonable likelihood that the outcome of the trial would have been different had counsel timely objected and the charge now proposed by petitioner given. In addressing petitioner's claim on direct appeal that the Section 1832 charge was defective for failing to require a finding that petitioner acted with knowledge, the Court of Appeals found the evidence of petitioner's knowledge was so overwhelming that, if there was any error in this aspect of the charge, the error was harmless.

> [Defendant's claim that the Section 1832 charge was
> defective for failing to require the jury to find
> defendant acted with knowledge] fails at the final step

27

of plain-error analysis in light of overwhelming evi-
dence that Agrawal possessed the requisite knowledge
not only when he removed the code from SocGen's office
and brought it to his home, but thereafter when he
transmitted parts of it to Tower. An FBI agent testi-
fied to Agrawal's post-arrest admissions that he
printed SocGen's HFT computer code onto papers and then
transported those papers in a knapsack to New Jersey,
knowing that he was not specifically authorized to do
so. While on the one hand, Agrawal told the agent that
he thought SocGen would have approved his actions in
order to further his work, on the other hand, he stated
that he did not tell his supervisors what he had done
because "he was afraid to do so." Tr. 803. More
damning still, Agrawal testified at trial that he knew
that the code in his possession was proprietary to
SocGen and that he, nevertheless, shared some of that
proprietary information with Tower personnel, knowing
that it was wrong to do so.

. . . [I]n light of Agrawal's admissions that he
knew various of his actions with respect to SocGen's
code were unauthorized, as well as the other overwhelm-
ing evidence of his guilt, we conclude that a failure
to correct possible error in an omitted knowledge
charge would not here seriously affect the fairness,
integrity, or public reputation of judicial proceed-
ings. . . .

United States v. Agrawal, supra, 726 F.3d at 257 (footnote
omitted).

Thus, even if I assume that petitioner satisfies the
first element of the Strickland analysis with respect to this
specification of ineffective assistance, petitioner cannot
satisfy the second element.

Petitioner's second specification of ineffective
assistance with respect to the jury charge asserts that counsel

was ineffective for failing to object to the omission of an instruction that, in order to find petitioner guilty of violating Section 2314, the jury had to find that the property described in the indictment constituted goods, wares or merchandise.[7] Again, the Court of Appeals' decision is fatal to petitioner's claim. In rejecting petitioner's claim on direct appeal that the jury charge was defective, the Court of Appeals stated:

> Although Agrawal never requested that the district court submit to the jury the question of whether the government had proved the NSPA's "goods, wares, [or] merchandise" requirement, he now argues that it was legal error not to do so. Even if we assume, without deciding, that the omission satisfies the first two prongs of plain-error review, the argument fails the final two criteria. . . . [T]he paper copies of the code stolen by Agrawal so plainly constitute "goods" as to allow us confidently to conclude that there is no

---

[7]The charge that was actually given with respect to the Section 2314 charge provided, in pertinent part:

> First, that at some time between June 2009 and April 2010 the defendant transported, transmitted, or transferred across state lines some of Société Générale's property -- specifically, some or all of the computer code used by Societe Generale [sic] in its high-frequency trading operation; Second, that the computer code was stolen, in the sense of converted, as I have previously explained that term to you; Third, that the defendant, knowing the computer code was stolen, purposely transported it in interstate commerce; and Fourth, that the value of the property was $5,000 or more.

Brief and Special Appendix for Defendant-Appellant Samarth Agrawal, United States v. Agrawal, supra, 726 F.3d 235 (No. 11-1074-CR), 2011 WL 6961801 at *29 (footnote omitted).

> reasonable probability that the failure to submit the question to the jury affected the outcome of Agrawal's trial. <u>See</u> <u>United States v. Marcus</u>, 130 S. Ct. at 2164; <u>cf</u>. <u>Neder v. United States</u>, 527 U.S. 1, 16-17, 119 S. Ct. 1827, 144 L.Ed.2d 35 (1999) (holding failure to charge or submit required element harmless error where proved by overwhelming evidence). For the same reason, the omission could not have seriously affected the fairness, integrity, or public reputation of the judicial proceedings. <u>See</u> <u>United States v. Cotton</u>, 535 U.S. at 632-33, 122 S. Ct. 1781.

<u>United States v. Agrawal</u>, <u>supra</u>, 726 F.3d at 257.

Again, the array of evidence against petitioner establishes that petitioner was not prejudiced by the failure to submit the question of "goods, wares, [or] merchandise" to the jury.

Petitioner's third specification of ineffective assistance with respect to the charge claims that counsel improperly failed to object to the omission of an instruction explaining how the jury should determine whether the value of the computer code met the $5,000 threshold necessary to sustain a Section 2314 conviction. Again, I conclude that petitioner cannot show prejudice as a result of the alleged failure to object.

18 U.S.C. § 2311 provides the relevant definition of "value" as that term is used in Section 2314: "'Value' means the face, par, or market value, whichever is the greatest, and the aggregate value of all goods, wares, and merchandise, securities, and money referred to in a single indictment shall constitute the

value thereof."  The suggested instruction on "value" in the
leading treatise on jury instructions does not provide substan-
tial elaboration on the statutory definition.[8]  Thus, "value" as
used in Section 2314 is not a term of art, but rather has its
ordinary, common sense meaning.

There was uncontested evidence in this case that the
code petitioner misappropriated generated more than $10 million
in revenue for SocGen during 2007, 2008 and 2009, that SocGen
required employees to sign confidentiality/non-disclosure agree-
ments, that SocGen had systems in place that prevented the code
from being copied electronically and that petitioner's represen-
tation to Tower that he could replicate the trading system

---

[8]The instruction suggested in 3 Leonard B. Sand et al.,
Modern Federal Jury Instructions:  Criminal, Instruction 54-29
provides, in pertinent part:

> In determining the value of the property, you may
> look at the face or par value of the property, or its
> market value -- that is, the amount of money the
> property could be sold for in the open market --
> whichever is greatest. . . .  If you find that the
> value of the property referred to in any count of the
> indictment is less than $5,000, then you must find the
> defendant not guilty of that count.

> It does not matter if you find the defendant
> actually received less than $5,000 for the goods,
> wares, or merchandise . . . .  If the evidence shows,
> and you find beyond a reasonable doubt that the
> property's total face, par, or market value was $5,000,
> then this element of the offense is satisfied.

embodied in the code resulted in the offer of a job with an annual salary in excess of $500,000. In light of this evidence and the common sense meaning of the term "value" as used in Section 2314, there is no reasonable probability that instructing the jury on how to assess value would have lead it to conclude the code had a value of less than $5,000. Thus, petitioner suffered no prejudice from counsel's failure to request a charge explaining how the jury should determine the value of the computer code.

> d. Counsel's Allegedly
>    Erroneous Advice
>    that Petitioner Could
>    Be Found Guilty Only on
>    the Allegations in the
>    Indictment's "To Wit" Clause

In his final specification of ineffective assistance, petitioner asserts that trial counsel erroneously advised him that he could be found guilty only on the allegations in the indictment's "to wit" clauses, and based on this advice, petitioner elected to testify. Although it is not entirely clear, petitioner appears to be claiming that his counsel advised him that he could be found guilty only if he had the intent to convert the computer code at the time he copied it and trans-

ported it to his residence.[9]  Based on this advice, petitioner

testified and admitted to virtually all of the elements of the

offenses except his intent at the time he copied and transported

the code.

---

[9]Petitioner states the following in support of this aspect
of his claim:

> Few days before trial, trial counsel suggested
> that he "finally had an epiphany" that the Government
> "made a huge mistake" in the indictment by limiting the
> to-wit clause to the act of printing and removing the
> code from the bank's building.  According to him,
> defense's liability was limited to the to-wit clause
> and thereby to the actions and timings mentioned only
> in point number 19 and 21 of the indictment.  Based on
> this theory counsel suggested me to take the stand and
> testify.  During my testimony this Court rejected the
> defense's theory (discussed during a side-bar
> conversation between the Court and the trial counsel),
> calling it -- "an absurdity."  It was also reflected in
> the cha[r]ged jury instructions that the Court prepared
> during a short break.  Even after knowing the Court's
> opinion trial counsel continued with the same theory of
> defense and with my testimony hoping that "he can
> change the Judge's mind during the course of rest of
> the trial."  Trial counsel's "strategic decision to
> challenge nothing about the case except the
> Government's ability to prove Agrawal's culpability at
> the precise time he copied and removed the computer
> code printouts" (quoting the Second Circuit's decision)
> as simply unreasonable and amounted to presenting no
> defense at all to the complex charges in this case.
> Contrary to objecting to the jury instructions trial
> counsel, due to his deficient comprehension of the law,
> had me take the stand, testify, and admit the elements
> of the offense, as they were understood at the time.

(Petition, dated Mar. 4, 2015 (Docket Item ("D.I.") 1) at 9).

The relevant inquiry is whether petitioner was preju-
diced by this advice, i.e., whether there is a reasonable proba-
bility petitioner would have been acquitted had he not testified.
The record demonstrates that the answer to this question is no.
The government's evidence at trial included testimony from SocGen
and Tower employees, testimony from an expert on high frequency
trading, printouts of the code and handwritten notes recovered
from petitioner's residence, audio recordings of meetings between
petitioner and Tower employees, video recordings and computer
logs showing petitioner's copying, printing and removal of the
code, employment contracts and confidentiality agreements.  Brief
for the United States,  United States v. Agrawal, supra, 726 F.3d
235 (No. 11-1074-CR), 2012 WL 1154201 at *7.  The government also
offered evidence of petitioner's post-arrest statements in which
he admitted that he had printed out the code and taken it to his
residence without disclosing to his supervisors that he was doing
so and without authorization from SocGen.  United States v.
Agrawal, supra, 726 F.3d at 239.  Although the government readily
concedes that petitioner's testimony was helpful to the prosecu-
tion (Memorandum of Law of the United States of America in
Opposition to the Petition for a Writ of Error Coram Nobis, dated
July 15, 2015 (D.I. 6) at 15), in light of the weight of the
evidence against him, I conclude that petitioner would have been

found guilty even if he had not testified. Thus, this specification of ineffective assistance also fails to establish prejudice.

### e. Summary

As the foregoing demonstrates, a substantial portion of the petition is an attempt to recycle arguments made and rejected on direct appeal, under the guise of ineffective assistance of counsel. To the extent the Court of Appeals found either no error or no prejudice, its conclusions are fatal to petitioner's ineffective assistance claims. To the extent petitioner is asserting new claims, the record convincingly demonstrates that any arguable shortcoming by counsel did not result in any prejudice to petitioner.

## IV. Conclusion

For the foregoing reasons, I respectfully recommend that the petition be denied in all respects.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 445 (1962).

## V. OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections. See also Fed.R.Civ.P. 6(a). Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, New York, New York 10007, and to the Chambers of the undersigned, 500 Pearl Street, Room 1670, New York, New York 10007. Any requests for an extension of time for filing objections must be directed to Judge Rakoff. FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW. Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir.

1992); <u>Wesolek v. Canadair Ltd.</u>, 838 F.2d 55, 57-59 (2d Cir.

1988); <u>McCarthy v. Manson</u>, 714 F.2d 234, 237-238 (2d Cir. 1983).

Dated:    New York, New York
          August 1, 2017

                                        Respectfully submitted,

                                        HENRY PITMAN
                                        United States Magistrate Judge

Copies sent by email and FedEx to:

Mr. Samarth Agrawal
II-C-60, Nehru Nagar
Ghaziabad
Uttar Pradesh 201001
India

samarth.agrawal@gmail.com

Copy mailed to:

Jaimie L. Nawaday, Esq.
Assistant United States Attorney
Southern District of New York
One Saint Andrew's Plaza
New York, New York  10007